ENOS BENHAM AND WIFE *vs.* TRUMAN S. MINOR AND ANOTHER.

By a deed conveying certain lands the premises were warranted free from incumbrance, " except that the presbyterian society have a right to have the horseshed stand where it now does, during the life thereof."

Held that the term " life" referred to the continuance or existence of the shed as such, and that the exception in the deed was equivalent to saying that the shed, as long as it could be reasonably used for the purpose for which it was erected, might continue to stand on the land conveyed; and that the owners of the shed might make reasonable repairs upon it from time to time as they were needed.

TRESPASS for entering upon the plaintiffs' land, and pulling down and rebuilding a shed standing thereon; brought to the Superior Court, and tried on the general issue closed to the court (*Granger, J.*)    On the trial the court found the following facts:

Samuel Steele by warranty deed dated November 28, 1825, conveyed to Roswell Abernethy, the plaintiffs' grantor, the premises in question, with the following exception in the deed: " except that the presbyterian society has the right to have said horse-shed stand where it now does during the life thereof." The horse-shed referred to in the exception was built by the members of said society, by the consent of the society, and when built became the property of those who built it. The defendants were at the time of the alleged trespass the legal owners of the shed and stall in question. The horse-shed had existed as such from before the date of said deed to the time of the alleged trespass, and the defendants and those under whom they claim had been in the actual possession and occupancy of the shed and stall, and of the land covered by it, during all that time. The plaintiffs at the time of the alleged trespass were not, and never had been, in the possession of the land or shed. And the court, in conformity with the plaintiffs' claim, decided that by the construction of said deed the plaintiffs had, under their title from Roswell Abernethy, the legal title to the land covered by the shed, subject to the right of the society as therein named to have it remain on the land during the shed's life. The shed was in " life" and being and had an existence as a horse-shed, and was used as such by the defendants, at the time of the alleged trespass. The repairs made by the defendants, which constituted the trespass complained of, were not a rebuilding of the shed, and did not destroy its " life." The shed was a structure about fifty feet long, built in the usual manner of meeting-house sheds, divided into five stalls open in front, each owned by different persons. The shed had become somewhat dilapidated, needed repairs, but was used by the owners as a shed up to the time of the alleged trespass, when the defendants, in connection with the other owners

of the stalls, repaired it by putting in a new sill on the backside running the whole length of the shed, a cross work mostly new on the end of the defendants' stall, a new post or two, and new siding.

Upon these facts the court rendered judgment for the defendants, and the plaintiffs filed a motion in error.

*Cothren,* for the plaintiffs in error.

*E. W. Seymour* and *Andrews,* for the defendants in error.

CARPENTER, J. This case comes up on a motion in error. The motion does not present any question of law very clearly, and in that respect is open to criticism; but we can gather from the whole record, that the court below was called upon to construe a certain clause in a deed, under which the plaintiffs claim, and that the construction put upon it was adverse to the claim of the plaintiffs. This question of construction is the only one we can properly consider. The clause referred to is as follows: " and that the same is free from all incumbrances whatsoever, except that said presbyterian society have a right to have the said horse-shed stand where it now does during the life thereof." The defendants are the legal owners of a portion of said horse-shed, and the plaintiffs own the land on which the shed stands, subject to such rights as the owners of the shed have under the exception quoted above. The defendants entered upon the land and repaired the shed; and that was the alleged trespass. The plaintiffs claim that the defendants had no right under the exception to repair the shed, but that it must stand as it was when the deed was given in 1825, without repairs, and when it could be no longer used it would cease to be an incumbrance. The defendants denied this claim, and insisted that they had a right to make ordinary repairs, and thus prolong its existence in suitable condition for use.

The court below sustained another claim made by the plaintiffs, and that was that the words, " the life thereof," referred to the shed, and not to the presbyterian society. We

have no occasion therefore to review that question, but assuming that it was correctly decided, we will consider whether the court was right in overruling the other claim.    The language used is the language of the grantor, in naming an incumbrance outstanding in a third party, as an exception in the clause warranting the premises to be free from incumbrances.    This language must have its ordinary meaning applied to a matter of this kind, as we discover nothing in the deed, or the circumstances of the case, to qualify that meaning, or show that it was used in a different sense.    What then is meant by the life of a shed ?    We suppose that it must refer to the continuance or existence of the shed as such, and that the clause in the deed is equivalent to saying, that the shed, so long as it can be reasonably used for the purpose for which it was erected, may continue to stand on the land conveyed.    The universal practice among men of ordinary prudence is to keep in suitable repair all such buildings, and thus prolong their existence and usefulness.    To do otherwise would be waste and improvidence.    The fair inference then is, that the parties to this deed must have contemplated and understood that the owners of this shed would treat and use it precisely as men ordinarily treat and use buildings of that description ; and that would include reasonable repairs from time to time as the same were needed.    The facts found by the court show, " that said shed was in life and being and had an existence as a horse-shed, and was used as such by the defendants at the time of the alleged trespass ; that the repairs made by the defendants, which constituted the trespass complained of in this action, were not a rebuilding of the shed, and did not destroy its life."

Upon these facts we are satisfied that the ruling of the court below was right, and that there was no error in the judgment.

In this opinion the other judges concurred ; except SEYMOUR, J., who having been consulted in the case when at the bar did not sit.